In re VIII SOUTH MICHIGAN AS-
SOCIATES, an Illinois Limit-
ed Partnership, Debtor.

William H. GRABSCHEID, as Trustee of
VIII South Michigan Associates,
Plaintiff,

v.

MIDWEST MECHANICAL, Defendant.

Bankruptcy No. 91 B 25677.
Adv. No. 94 A 1316.

United States Bankruptcy Court,
N.D. Illinois,
Eastern Division.

March 22, 1995.

Joseph D. Frank, Jenner & Block, Chica-
go, IL, for plaintiff.

James T. Arvey, Schwartz & Freeman,
Chicago, IL, for defendant.

*MEMORANDUM OPINION AND ORDER*

JOHN D. SCHWARTZ, Chief Judge.

The matter before the court is the Motion of Midwest Mechanical ("Midwest") for Partial Summary Judgment against William H. Grabscheid, as Trustee ("Trustee") of VIII South Michigan Associates ("VIII South" or "Debtor") with respect to the Trustee's complaint seeking the return of certain payments made by VIII South to Midwest during the preference period, as defined by 11 U.S.C. § 547(b).[1] Midwest concedes that, with the exception of § 547(b)(5), the Trustee has satisfied his burden in establishing that Midwest received preferential payments from VIII South. However, Midwest maintains that § 547(b)(5) cannot be satisfied since, in the event that this court rules in favor of the Trustee, it would obtain a mechanic's lien for the work it performed and such lien's effective date would precede the commencement of VIII South's bankruptcy case. Therefore, any recovery by the estate would eventually have to be returned to Midwest to satisfy its lien, leaving Midwest in the same position it was in before the return of the preferential payment. The Trustee does not dispute that Midwest could obtain a mechanic's lien for the amount in question. Instead, he contends either that Midwest could not enforce its lien against the interest of the bankruptcy estate in the leasehold in question, as the leasehold had no value to the bankruptcy estate, or that Midwest has not established that its services enhanced the property.[2] For the reasons stated below, the court denies Midwest's Motion for Partial Summary Judgment.

*SUMMARY OF UNDISPUTED FACTS*

Rule 402.M of the Bankruptcy Rules for the United States District Court and the United States Bankruptcy Court for the Northern District of Illinois require the moving party to file a detailed statement of mate- rial facts as to which there are no genuine issue. The party opposing the motion is required by Rule 402.N to file a response to the movant's statement and set forth any facts which require denial of summary judgment.

Midwest has filed what it labels a "Joint Statement To Facts." The Trustee, in his response, while acknowledging that Midwest's filing does not conform to the requirements of Rule 402, accepts Midwest's statement of facts for the limited issue presented in Midwest's motion. Accordingly, the court shall not require strict compliance with Rule 402 and shall accept the Joint Statement To Facts, to the extent that they are agreed upon, for purposes of this motion. The following facts emerge as undisputed:

On December 3, 1991, VIII South filed its petition for relief under Chapter 11 of the Bankruptcy Code.[3] On July 27, 1992, the case was converted to a Chapter 7 proceeding and the Trustee was appointed. In the ninety days prior to December 3, 1991, three separate checks totalling $48,644.24 were paid to Midwest by VIII South pursuant to various oral and written contracts for improvements made on its leasehold interest, a property commonly known as 8 South Michigan Avenue, Chicago, IL ("Leasehold"). Midwest provided labor and materials as part of work it performed for the Eight South and therefore had the right to file a mechanic's lien for such labor and materials under Illinois law pursuant to 770 ILCS 60/01–39. Midwest filed such liens for labor and materials related to work it performed for VIII South but was not paid for. In addition, Midwest filed its claim for such labor and materials in the VIII South bankruptcy proceeding and has been granted relief from the automatic stay by this court to pursue the foreclosure of its existing lien claims.

On December 14, 1993, this court approved the sale of the estate's interest in the Lease-

---

1. Unless stated otherwise, all statutory references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1330.

2. Whether Midwest's services enhanced the leasehold is of little concern to the Trustee. Assuming that Midwest can obtain a mechanic's lien, the issue of enhancement is not for the bankruptcy court but for the foreclosure proceeding that will be necessary in order to enforce the lien.

3. Contrary to the Joint Statement To Facts, the Trustee was not appointed upon the commencement of the Chapter 11 case.

hold to the Northern Trust Company, or its nominee (hereafter referred to collectively as the "Northern"[4]) for a credit bid of $5.65 million. *See Order Approving Trustee's Sale of Assets and Related Relief* ("Sale Order"). The Northern purchased the Leasehold free and clear of all liens, claims, and encumbrances, except as defined in the Sale Order. The Sale Order specifically stated that the Northern took the Leasehold subject to the existing mortgage and the Mechanic's Lien Claims. *See Sale Order* at ¶ 17. Included in the definition of Mechanic's Lien Claims is a claim of Midwest's for $41,812.13. *Id.* at ¶ 9(b). Northern's claim, secured by the Leasehold, was well in excess of its bid. Accordingly, the Debtor's estate received only a nominal amount of cash from the sale.

## DISCUSSION

Section 547(b)(5) provides that:

(b) Except as provided in subsection (c) of this section, the trustee may avoid any transfer of an interest of the debtor in property—

(5) that enables such creditor to receive more than such creditor would receive if—

(A) the case were a case under chapter 7 of this title;

(B) the transfer had not been made; and

(C) such creditor received payment of such debt to the extent provided by the provisions of this title.

■ Under this section, the Trustee must show that Midwest received more in the alleged preferential transfer than it would have in a hypothetical Chapter 7 liquidation, assuming that the transfer in question had not been made. *In re LCO Enterprises*, 12 F.3d 938, 941 (9th Cir.1993); *In re Julien Co.*, 168 B.R. 647, 659 (Bankr. W.D.Tenn.1994). The hypothetical analysis is made as of the commencement of the bankruptcy case. *Julien*, 168 B.R. at 659.

Ordinarily, transfers to fully secured creditors are not preferential unless they exceed the value of the creditor's security interest as such creditor's position is not improved by the transfer. *Id.* However, if the debtor's estate is depleted, such transfer may nonetheless be preferential. *Id.*

■ Midwest asserts that a ruling in favor of the Trustee will cause a circular result. It would be forced to return to the Trustee the payments found to be preferential and in its stead would file a mechanic's lien against property of the estate in the amount of such payments. The Trustee would then be required to repay Midwest the amount he recovered in this proceeding to clear title to the property. The Trustee does not dispute the ability of Midwest to file a valid mechanic's lien subsequent to a decision by this court in his favor. Instead, the Trustee asserts that Midwest can not collect on such lien from the estate because the estate received only nominal value for property securing Midwest's lien. (The Northern's payment to the Trustee pursuant to the Sale Order covered numerous matters).

First, Midwest did not address the fundamental flaw of its argument, that the estate did not receive any proceeds from the sale of the Leasehold. The premise of Midwest's argument is either that the estate remains in possession of the property securing its lien or that proceeds remain to be divided amongst the Debtor's secured creditors. However, the Debtor sold its interest in the Leasehold free and clear of all encumbrances, except for, among other exceptions, the Mechanic's Lien Claims and the Northern's mortgage. *See* Sale Order at ¶¶ 9, 17. Therefore, Midwest's argument, based on 770 ILCS § 60/19, relating to apportionment of funds in the event that the proceeds of a sale do not satisfy all liens[5], is of no avail to Midwest.

---

**4.** The Northern purchased the estate's interest in the Leasehold through a nominee so as to not cause a merger of the lien with the title.

**5.** 770 ILCS 60/19 provides that:

The court shall ascertain the amount due each lien creditor and shall direct the application of the proceeds of sale to be made to each in proportion to their several amounts, according

to the provisions of this act, but the claims of all persons for labor as provided in Section 15 of this Act shall be first paid. If, upon making sale under this act of any or all premises, the proceeds of such sale shall not be sufficient to pay all claims of all parties, according to their rights, the judgment shall be credited by the amount of the sale and enforcement may proceed in favor of any creditor whose claims are

Any lien that Midwest may obtain would attach to the Leasehold, which is now held by the Northern. The sale to the Northern did not generate any proceeds to apportion among the lienholders. Accordingly, it would appear that this is not a situation that resembles the old dog that chased its tail and finally caught it, as Midwest contends. Rather, it appears that Midwest is chasing the wrong dog. Any preference recovery by the Trustee would be distributed to the creditors of the estate in accordance with the provisions of the Bankruptcy Code and would not result in a lien being placed on any property of the estate. Midwest's failure to address this issue justifies the denial of its partial summary judgment motion.

Next, Midwest asserted that its mechanic's lien would be at a higher priority than any other secured creditor. However, it offers nothing to substantiate this bold assertion. Northern purchased the Leasehold subject to the Northern's mortgage and the mechanic's liens of those lienholders described in the Sale Order. Midwest did not explain why it should recover against the estate on its mechanic's lien while there may be other, similarly situated mechanic lienholders who can not so recover. Instead, it makes conclusory statements based on statutory language without describing how that statutory language affects other parties in the same position as itself. Midwest's statutory arguments are not persuasive. While 770 ILCS § 60/16 may give Midwest a priority lien[6], Midwest has not stated why its priority should be greater then the other

mechanic lienholders described in paragraph 9 of the Sale Order. That there are other similarly situated lienholders is a fact that further mandates the denial of Midwest's motion.

Finally, while both Midwest and the Trustee discuss enhancement, this issue is not for the bankruptcy court under the facts of this case. Midwest can only collect on its mechanic's lien by instituting, or becoming a part of existing, foreclosure proceedings involving the holder of the Leasehold security interest (the Northern). Since the bankruptcy estate no longer owns an interest in the Leasehold and since no liens attached to the proceeds of the sale (*See* Sale Order), the estate would not be a party to such foreclosure proceedings. Plainly stated, the issue of enhancement is not before this court.[7]

### CONCLUSION

Midwest's Motion for Partial Summary Judgment shall be denied because it failed to establish that it would have received the same or better treatment in a Chapter 7 liquidation.

**IT IS HEREBY ORDERED** that for the reasons set forth above, Midwest's Motion For Partial Summary Judgment is denied. The ruling date previously set for March 30, 1995 is hereby stricken. A status hearing shall take place at April 6, 1995 at 10:30 a.m.

---

not satisfied for the balance due as upon a deficiency judgment in the foreclosure of a mortgage and such deficiency judgment shall be a lien upon all real estate and other property of the party against whom it is entered to the same extent and under the same limitations as a judgment for the payment of money; and in case of excess of sales over the amount of the judgment, such excess be paid to the owner of the land, or to the person who may be entitled to the same, under the direction of the court.

**6.** 770 ILCS 60/16 provides in relevant part that:

No incumbrance upon land, created before or after the making of the contract under the provisions of this act, shall operate upon the building erected, or materials furnished until a lien in favor of the persons having done work

or furnished material shall have been satisfied, and upon questions arising between incumbrancers and lien creditors, all previous incumbrances shall be preferred to the extent of the value of the land at the time of making of the contract, and the lien creditor shall be preferred to the value of the improvements erected on said premises, and the court shall ascertain by jury or otherwise, as the case may require, what proportion of the proceeds of any sale shall be paid to the several parties in interest....

**7.** For an excellent discussion on proving enhancement when enforcing a mechanic's lien, *See Lyons Saving, n/k/a Superior Bank, FSB v. Gash Associates*, 86 CH 0682 (Cook County, IL—Chancery Division April 29, 1994) (J. Meacham presiding).